IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | | |
|---|---|---|
| BRENDA JACKSON, | § | |
| | § | |
| Plaintiff, | § | |
| | § | |
| v. | § | Civil Action No. 3:12-CV-0927-BK |
| | § | |
| MICHAEL J. ASTRUE, | § | |
| Commissioner of Social Security, | § | |
| | § | |
| Defendant. | § | |

### MEMORANDUM OPINION

This case is before the Court for a ruling on Plaintiff's *Motion for Summary Judgment*. (Doc. 19). For the reasons that follow, the motion is **DENIED,** and the Commissioner's decision is **AFFIRMED**. Because Defendant did not cross-move for summary judgment, he is ordered to do so within seven days of the date of this order so that the case can be closed.

### I.  BACKGROUND[1]

**A.      Procedural History**

Brenda Jackson (Plaintiff) seeks judicial review of a final decision by the Commissioner of Social Security (Commissioner) denying her claim for Supplemental Security Income (SSI) and Disability Insurance Benefits (DIB) under the Social Security Act. In February 2009, she filed for SSI and DIB, claiming that she had been disabled since December 2007. (Tr. at 140, 149). Her application was denied at all administrative levels, and she sought review in this Court. (Tr. at 1-6, 23-38, 109-12).

---

[1] The following background comes from the transcript of the administrative proceedings, which is designated as "Tr." All medical terms have been defined by reference to *Stedman's Medical Dictionary* (27th ed. 2000) available on Westlaw.

**B.     Factual History**

Plaintiff was 55 years old on her alleged disability onset date, had an eleventh-grade education, and had completed her GED. (Tr. at 69). She had past relevant work history as a housekeeper, telemarketer, clerk, driver, and caregiver for disabled persons. (Tr. at 71). Plaintiff's history of back problems began in December 2007 when she was struck by a car backing out of a parking spot. (Tr. at 253-54). Plaintiff was taken to the hospital and discharged the following day with diagnoses of acute back and neck pain. She sought follow-up treatment with pain specialist Dr. Don West. (Tr. at 262, 279). At that time, Plaintiff reported severe aching and stiffness in her neck and low back, which was made worse by prolonged sitting, standing, and movement. *Id.* Dr. West diagnosed her with lumbar strain and prescribed various medications and physical therapy. *Id.*

A January 2008 MRI showed minimal to mild disc bulges at several levels in Plaintiff's lumbar spine, with the most severe at L4/5 where the bulge was moderate. At that level, borderline spinal canal stenosis (narrowing) was present, predominantly involving recesses which contained the traversing L5 nerve roots. (Tr. at 275-76). Although her pain level was about 4-5 out of 10, even with activity, Plaintiff stated that she could not work. (Tr. at 276). Dr. West administered lumbar epidural steroid injections twice in early 2008, after which Plaintiff reported significant improvement. (Tr. at 273-74, 276-77).

In February 2008, Dr. Stephen Ozanne conducted a workers' compensation exam and noted tenderness in Plaintiff's lumbar spine and that straight leg raise testing that was positive for sciatica. (Tr. at 271). Dr. Ozanne opined that Plaintiff could work for six hours a day in a sedentary job. (Tr. at 272). At a second workers' compensation examination, the doctor noted that Plaintiff had some muscle tightness in her back, exhibited 75% range of motion in her

lumber spine, and her MRI showed borderline stenosis of L4 on L5. (Tr. at 302). Plaintiff was given a five percent impairment rating. *Id*.

Starting in early 2010 and continuing throughout that year, Plaintiff saw Dr. Ronnie Shade for pain management. (Tr. at 349-54). She complained of pain, numbness, tingling, stiffness, muscle cramps, and weakness in her back and legs. *Id*. In March and April 2010, Dr. Shade diagnosed Plaintiff with (1) chronic lumbar strain with mild spondylitis (inflammation of one or more vertebrae); (2) lower extremity radiculopathy (disorder of the spinal nerve roots); and (3) lumbar spinal stenosis L4-5, and he noted that her stenosis involved the bilateral subarticular (under the joint) recesses which contained the traversing L5 nerve roots. (Tr. at 349, 351, 353).

In April 2010, Dr. Shade opined that Plaintiff could lift a maximum of ten pounds and stand/sit/walk for a total of four hours a day in two-hour intervals. (Tr. at 344). Dr. Shade stated that Plaintiff would need to alternate between sitting and standing, and she would also need to lie down after four hours. *Id*. In his opinion, Plaintiff required one hour of bed rest in an eight-hour workday, and she could not operate foot controls or bend. *Id*. Dr. Shade noted that objective evidence supported the presence of a condition which could reasonably account for Plaintiff's pain. (Tr. at 345). He also opined that Plaintiff would be unable to work on a consistent full-time basis and was limited to three hours of light duty work per day. *Id.* In May 2010, Plaintiff underwent nerve conduction testing and an electromyography, which showed chronic left S1 radiculopathy. (Tr. at 415).

Beginning in June 2009, Plaintiff also suffered from major depressive disorder which she said was caused by her job loss and her mother's cancer diagnosis. (Tr. at 357, 483, 485). She was prescribed an antidepressant and thereafter usually followed up only for refills, often stating

that she was doing well, the medication was working fine, and she was sleeping and eating well. (Tr. at 447-70, 475, 477, 479, 484).

**C.     ALJ's Findings**

In October 2010, the ALJ found as an initial matter that Plaintiff had not engaged in substantial gainful activity since she alleged her disability began. (Tr. at 31). At step two, the ALJ determined that Plaintiff's lumbar strain and mild disc bulge at L4/5 were severe impairments because they caused more than slight limitations on Plaintiff's ability to work. *Id*. At step three, the ALJ determined that Plaintiff did not have an impairment or combination of impairments that met or medically equaled one of the presumptively disabling impairments listed in 20 C.F.R. 404 Subpart P, Appendix 1, Part A. *Id*.

Next, the ALJ determined that Plaintiff retained the physical residual functional capacity (RFC) to perform light work, as defined by 20 C.F.R. §§ 404.1567(b), 416.967(b). (Tr. at 32). The ALJ found that Plaintiff could lift and carry 20 pounds occasionally and ten pounds frequently, she could sit for six hours and stand/walk for two hours in an eight-hour workday. *Id*. Additionally, the ALJ determined that Plaintiff could frequently balance, kneel, and crawl and could occasionally climb, stoop, and crouch, but could never climb ropes, ladders, or scaffolds. *Id*. The ALJ also found that Plaintiff had no manipulative, visual, or communicative limitations. *Id*. Based on that RFC finding and the vocational expert's testimony regarding the demands of Plaintiff's past work, the ALJ found that Plaintiff could perform her past work as a car jockey, cafeteria monitor, photocopy machine operator, telemarketer, and photo checker. (Tr. at 37).

**D.     Administrative Appeal Proceedings**

Following the ALJ's decision, Plaintiff presented evidence of her subsequent medical treatment to the Appeals Council. Specifically, in January 2011, Plaintiff underwent a lumbar myelogram and radiographic studies. (Tr. at 388). The studies showed extradural defects (defects on the outside of the spinal membrane) at L4/L5 and L5/S1 and minimal spondylosis (stiffening of the vertebrae) at L3/L4 and L4/L5. *Id.* They also showed disc protrusions at L5/S1 and L4/L5. (Tr. at 389). At L4/L5, the protrusion moderately effaced the thecal sac and right L5 nerve root, causing severe right lateral recess stenosis. *Id.*

Dr. Shade referred Plaintiff to a spinal surgeon, Dr. Kevin James, in January 2011. (Tr. at 387). Dr. James recommended that Plaintiff undergo spinal fusion surgery to take the pressure off the nerves because she was not getting adequate relief from therapy and injections. (Tr. at 382-85). Plaintiff underwent a mental health evaluation to ensure that she was a good candidate for spinal surgery, and the testing indicated elevated anxiety and somatization (the conversion into physical symptoms of anxiety, or a wish for material gain associated with a legal action following an injury). (Tr. at 377-78). The examining psychologist opined that Plaintiff had a strong inclination to perceive and portray herself as being disabled by any level of pain and may unrealistically feel that she required total pain relief to return to work. (Tr. at 378-79).

Dr. Shade continued to treat Plaintiff's pain throughout 2011, and he repeatedly noted Plaintiff's lower extremity weakness, decreased sensation, and back pain, which indicated chronic radiculopathy. (Tr. at 371-76). Plaintiff also reported difficulty walking up and down stairs, occasional incontinence, cramps, stiffness, and muscle spasms. *Id.* Her work status remained light duty, part-time, and Dr. Shade's diagnoses were lumbar strain, radiculopathy, minimal spondylosis, and mild spinal canal stenosis. *Id.*

In August 2011, pain management physician Dr. Mike Shah noted that Plaintiff had a slow and antalgic gait, positive straight leg raise, and decreased sensation. (Tr. at 490). Dr. Shah believed that Plaintiff's symptoms were related to irritation and compression of nerve roots in the lumbar spine. *Id.* The following month, he performed a lumbar epidural steroid injection for Plaintiff's lumbar radiculopathy and sprain and discogenic low back pain. (Tr. at 488).

From November 2010 through August 2011, Plaintiff continued to get mental health treatment. (Tr. at 423-45). For the most part, she only sought refills of her antidepressant medication and followed up every several weeks in that regard. (Tr. 423-45). Plaintiff declined caseworker services, and was fully oriented, her mood was congruent, her thoughts were organized, and she stated that her medications generally were working well. *Id.* In April 2012, the Appeals Council noted in conclusory fashion that it had considered the additional information that Plaintiff had submitted, but the information did not provide a basis for changing the ALJ's decision. (Tr. at 1).

## II. ANALYSIS

**A**.     **Legal Standards**

An individual is disabled under the Act if, *inter alia*, he is unable "to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment" which has lasted or can be expected to last for at least 12 months. 42 U.S.C. § 423(d)(1)(A). The Commissioner uses the following sequential five-step inquiry to determine whether a claimant is disabled: (1) an individual who is working and engaging in substantial gainful activity is not disabled; (2) an individual who does not have a "severe impairment" is not disabled; (3) an individual who "meets or equals a listed impairment in Appendix 1" of the regulations will be considered disabled without consideration of vocational factors; (4) if an

individual is capable of performing his past work, a finding of "not disabled" must be made; and (5) if an individual's impairment precludes him from performing his past work, other factors including age, education, past work experience, and residual functional capacity must be considered to determine if any other work can be performed.  *Wren v. Sullivan*, 925 F.2d 123, 125 (5th Cir. 1991); 20 C.F.R. §§ 404.1520(a)(4), 416.920(a)(4).

Under the first four steps of the analysis, the burden of proof lies with the claimant. *Leggett v. Chater*, 67 F.3d 558, 564 (5th Cir. 1995).  The analysis terminates if the Commissioner determines at any point during the first four steps that the claimant is disabled or is not disabled.  *Id.*  If the claimant satisfies his burden under the first four steps, the burden shifts to the Commissioner at step five to show that there is other gainful employment available in the national economy that the claimant can perform.  *Greenspan v. Shalala*, 38 F.3d 232, 236 (5th Cir. 1994).  This burden may be satisfied either by reference to the Medical-Vocational Guidelines of the regulations or by expert vocational testimony or other similar evidence.  *Fraga v. Bowen*, 810 F.2d 1296, 1304 (5th Cir. 1987).

Judicial review of the Commissioner's denial of benefits is limited to whether the Commissioner's position is supported by substantial evidence and whether the Commissioner applied proper legal standards in evaluating the evidence.  *Greenspan*, 38 F.3d at 236; 42 U.S.C. §§ 405(g), 1383(C)(3).  "Substantial evidence is that which is relevant and sufficient for a reasonable mind to accept as adequate to support a conclusion; it must be more than a scintilla, but it need not be a preponderance."  *Leggett*, 67 F.3d at 564.  Under this standard, the reviewing court does not reweigh the evidence, retry the issues, or substitute its own judgment, but rather, scrutinizes the record to determine whether substantial evidence is present.  *Greenspan*, 38 F.3d at 236.

B. **Issues for Review**

*1. Whether the new evidence submitted to the Appeals Council diluted the record evidence such that the ALJ's decision was not substantially supported*

Plaintiff contends that the Appeals Council failed to give due consideration to the new medical evidence she submitted and, instead, summarily denied her appeal. (Doc. 19-1 at 13-14). Plaintiff urges that the new evidence diluted the record to the extent that the ALJ's determination was insufficiently supported because the new evidence directly contradicted the ALJ's findings and his decision to reject Dr. Shade's treating physician opinion. *Id.* at 15-16. Further, Plaintiff asserts that the ALJ's step two and RFC findings might have been different if the new evidence had been in front of the ALJ because the ALJ found the only severe impairments to be lumbar strain and a mild disc bulge at L4-5, but the newly submitted evidence supported diagnoses of disc bulges at other levels in her lumbar spine, severe stenosis, radiculopathy, and irritation and compression of a nerve root in her spine. *Id.* at 16. Finally, Plaintiff argues that the Appeals Council's error prejudiced her because the Council failed to consider the new evidence of her mental health problems and remand so that the ALJ could complete the required Psychiatric Review Technique (PRT). *Id.* at 16-18.

Defendant responds that the Appeals Counsel expressly stated that it considered the additional evidence that Plaintiff submitted, and the Council has no duty to discuss in detail the additional evidence. (Doc. 20 at 9-10). Defendant also urges that the Appeals Council committed no error in not remanding to the ALJ for application of the PRT. Defendant points out that Plaintiff only alleged in her application for benefits that she suffered from lower back problems, she never mentioned any mental health problems during her hearing, and her allegation of such problems is frivolous. *Id.* at 11-12. Plaintiff reiterates her arguments in her reply brief. (Doc. 21 at 1-5).

8

Evidence submitted for the first time to the Appeals Council is considered part of the record upon which the Commissioner's final decision is based. *Higginbotham v. Barnhart*, 405 F.3d 332, 337 (5th Cir. 2005). Based on its internal procedures, however, the Appeals Council need not provide a detailed discussion about all new evidence submitted to it. *Id.* at 335 n.1. Nevertheless, where new medical opinion evidence is so inconsistent with the ALJ's findings that it undermines the ultimate disability determination, several judges have found that the case should be remanded so that the Appeals Council can fully evaluate the treating source statement as required by law. *Brown v. Astrue,* 2010 WL 3895509, at *5-6 (N.D. Tex. 2010); *Lee v. Astrue*, 2010 WL 3001904, at *8-9 (N.D. Tex. 2010); *cf.* SSR 96-5 (providing that adjudicators must weigh medical source statements and RFC assessments and "provide appropriate explanations for accepting or rejecting such opinions"). This caselaw also finds support in 20 C.F.R. § 404.1527(e)(3), which requires that when the Appeals Council makes a decision, it must follow the same rules for considering medical opinion evidence that ALJs follow.

In the case at bar, the new medical records from Dr. Shade did not undermine the ALJ's disability determination to such an extent that Plaintiff's substantial rights were affected by the Appeals Council's failure to explicitly discuss the records. *See Mays v. Bowen*, 837 F.2d 1362, 1364 (5th Cir. 1988) ("Procedural perfection in administrative proceedings is not required" as long as "the substantial rights of a party have not been affected."). Plaintiff contends that the newly submitted evidence supported diagnoses of (1) disc bulges at levels in her lumbar spine other than L4/5, (2) severe stenosis, (3) radiculopathy, and (4) irritation and compression of a spinal nerve root. However, all of those diagnoses were present in the record before the ALJ and were not newly alleged before the Appeals Council. (Tr. at 275-76, 349, 351, 353, 415). Thus, the Appeals Council's failure to discuss Dr. Shade's new records did not affect Plaintiff's

substantial rights.[2] *Mays*, 837 F.2d at 1364; *see also Gonzalez v. Comm'r of Social Sec. Admin.*, 2012 WL 1058114, *10-11 (N.D. Tex. 2012) (finding that remand was not warranted when new evidence submitted to the Appeals Council did not contain any new impairments that were not already incorporated into the ALJ's decision; even if some of the limitations indicated a more substantial loss in the plaintiff's ability to work, those limitations did not dilute the record to such an extent that the ALJ's decision became insufficiently supported).

Plaintiff also claims that the Appeals Council's error prejudiced her because the Council failed to consider the new evidence of her mental health problems. But, again, evidence of that very impairment was squarely before the ALJ. (Tr. at 357, 447-70, 475, 477, 479, 483-85). Further, the new evidence presented to the Appeals Council does not indicate that Plaintiff's mental condition worsened after the ALJ rendered his opinion. In fact, during the later timeframe, Plaintiff typically only sought refills of her antidepressant medication, and she stated that her medications generally were working well. (Tr. at 423-45). Accordingly, Plaintiff's substantial rights were not affected by the Appeals Council's failure to explicitly address the new evidence of her mental condition. *Mays*, 837 F.2d at 1364. Defendant is thus entitled to summary judgment on this ground.

*2. Whether the ALJ's credibility finding is supported by substantial evidence*

Plaintiff next argues that the ALJ used boilerplate language to find that she was not credible instead of citing to discrepancies between Plaintiff's allegations and specific examples

---

[2] The Court recognizes that this rationale is slightly different than the basis for affirmance that Defendant raises. Nevertheless, in its capacity as an appellate court in this matter, this Court can affirm for any reason that appears in the record. *See Thomas v. Apfel,* 233 F.3d 575, *1 (5th Cir. 2000) (Table) (holding that court could uphold decision denying Social Security benefits for any basis that appeared in the record) (citing *Sojourner T v. Edwards*, 974 F.2d 27, 30 (5th Cir. 1992)); *see also In re Smith*, 160 B.R. 549, 554 (N.D. Tex. 1993) ("[T]his court may affirm a correct judgment for reasons not given by the court below or advanced to it.") (quotation omitted), *aff'd*, 39 F.3d 320 (5th Cir. 1994) (Table).

of objective evidence that contradicted her claims.  (Doc. 19-1 at 20-21).  Plaintiff contends that her allegations of pain are supported by her minimal activity level and diagnoses of disc bulges at multiple levels, severe stenosis, radiculopathy, compression/irritation of the nerve root, and chronic pain syndrome.  *Id.* at 21-23.

Defendant responds that the ALJ was sufficiently detailed in his assessment of Plaintiff's credibility, and his finding that she was not entirely credible is supported by medical evidence indicating that her impairments are not disabling.  (Doc. 20 at 13-14).  Defendant also asserts that it was appropriate for the ALJ to discredit Plaintiff's subjective complaints due to the numerous daily activities she engaged in.  *Id.* at 14.

Plaintiff replies that the ALJ's opinion contains no discussion of the medical evidence in relation to his credibility findings.  (Doc. 21 at 5).  Further, Plaintiff urges that Defendant's attempt to conduct a *post hoc* rationalization of the ALJ's credibility findings is prohibited.  *Id.* at 6-7.  Finally, Plaintiff maintains that objective evidence shows that her physical impairments are far more severe than credited by the ALJ.  *Id.* at 6.

Pain constitutes a disabling condition when it is "constant, unremitting, and wholly unresponsive to therapeutic treatment."  *Falco v. Shalala*, 27 F.3d 160, 163 (5th Cir. 1994).  Thus, the ALJ must make affirmative findings regarding a claimant's subjective complaints of pain.  *Id.*  The Court of Appeals for the Fifth Circuit has declined to adopt a "rigid approach" that would require the ALJ to articulate exactly what evidence supported his decision and discuss the evidence that he rejected.  *Id.*  The appeals court thus has found that the ALJ's findings sufficiently addressed the claimant's credibility even where the ALJ failed to detail his findings about the claimant's five alleged signs of pain.  *Id.* at 164.  In *Falco*, the ALJ simply found that several of the claimant's symptoms were not caused by his injuries, but by his weight, his

complaints were exaggerated, and the medical evidence was more persuasive than the claimant's testimony. *Id.*

In this case, the ALJ adequately articulated his reasons for finding Plaintiff's subjective complaints of pain to not be entirely credible. The ALJ pointed out that Plaintiff engaged in a number of daily activities, including going to church twice a week, driving the church bus, cooking, cleaning, going to her 13-year-old son's school activities, doing laundry, reading, watching television, and surfing the internet. (Tr. at 34). The ALJ stated that he closely observed Plaintiff's demeanor and behavior in the courtroom before, during, and after her testimony. While he stated that he did believe that her impairments could produce the symptoms in question, he concluded that Plaintiff's statements about their intensity and limiting effects were not entirely credible or consistent with the evidence of record. *Id.* The ALJ acknowledged that he was required to consider Plaintiff's daily activities, the intensity of her pain, the types of medication she was on, and other measures she used to treat her pain, and he had particularly considered whether Plaintiff had any weakness, atrophies, deformities, swelling, tenderness, spasms, stiffness, wasting, range of motion limitation, weight loss, and sensory motor deficits. (Tr. at 35-35). The ALJ then concluded that, considering the record as a whole, Plaintiff's allegations were not supported by the objective medical evidence, her daily activities, evidence of her demeanor throughout the record, or by statements from examining sources. (Tr. at 35). These findings are sufficiently specific to support the ALJ's credibility finding because the ALJ made affirmative findings regarding Plaintiff's subjective complaints of pain. *Cf. Falco*, 27 F.3d at 163. Similar to the ALJ in *Falco*, the ALJ in this case found that Plaintiff's complaints were exaggerated when compared to contradictory evidence, and the medical evidence was more persuasive than her testimony. *Id.* at 164. Moreover, contrary to Plaintiff's suggestion, the ALJ

was permitted to consider her daily activities when deciding whether she was disabled. *Leggett*, 67 F.3d at 565 n.12. Accordingly, Defendant also is entitled to summary judgment on this ground.

### III. CONCLUSION

For the foregoing reasons, Plaintiff's *Motion for Summary* Judgment (Doc. 19) is **DENIED**. Nevertheless, because Defendant did not cross-move for summary judgment, as this Court's scheduling order specifically directed, (Doc. 14 at 3), the Court cannot grant summary judgment in Defendant's favor and enter final judgment. Accordingly, Defendant is ordered to file a *Motion for Summary Judgment* within seven days of the date of this order so that the case can be closed.

**SO ORDERED** on October 9, 2012.

RENEE HARRIS TOLIVER
UNITED STATES MAGISTRATE JUDGE